May it please the court, sorry they're always too high for me. May it please the court, David Zuckerman, attorney. You can also lower that podium if you want to. There's a button right underneath you. You may want to show him, Stacey. Thank you. That's good. Now I can see the bench as well. Thank you very much. Perfect. May it please the court, David Zuckerman representing Joshua Mason. It's said that no man can serve two masters. And in this case, Mr. Mason's lawyer, Al Foster Garrett, chose to serve the person who was paying his bill rather than the defendant. This caused him to avoid pretrial preparation and to withdraw at a time when Mr. Garrett's services were urgently needed. Let's assume there was a conflict. What effect did it have on the presentation of the case? Well, first of all, during the trial itself, we know that the payer, who was Elton Mason, had directed Mr. Garrett I'm looking for a concrete reason. This happened, this didn't happen, this strategy wasn't pursued. He did not engage in pretrial preparation. If he had, that would have produced what? Well, of course, we do not have to prove actual prejudice, but the idea that you're instead of, he was putting witnesses on the stand who had not even been shown their prior statements, who were not even told that some of the statements they made were recorded, and they were floundering. But, of course, we don't have to show a Strickland type of prejudice from this. Tyler V. Sullivan, you have to show some effect on counsel's performance, don't you? Certainly, and I would say that that's a big effect. Failing to prepare witnesses is a significant effect on performance. We also then have, at the very end of the trial, post-trial, that we have a motion that Mr. Garrett filed, and he then withdrew right at a time, and at that time the jurors were willing to talk, but by the time they could get a new counsel, and because Mr. Garrett took months to give his file to new counsel, by that time the jurors could not be found. Now, my understanding was that at some point during the post-trial motions, new counsel was retained, hired an investigator, and the investigator contacted the juror who initially contacted trial counsel about the possibility of the juror having some bias. Am I correct about that? Is my description correct? I would have to perhaps double-check that during opposing counsel's time to make sure I have that exactly correct. Did you write the brief? Yes, I did. Wasn't that an argument you made in your brief about the opportunity to speak with the juror who had indicated there were some racial comments made? Oh, yes. Well, that certainly was exactly the issue in the post-trial motion. But you're unaware that there was retained counsel approved by the court who hired an investigator, contacted the juror who made the initial contact, interviewed that person, and reported to the court that there was no basis for a new trial motion based on juror misconduct. You're just not aware of that? No, I am aware of the fact that there was new counsel who ultimately found that he could not prove the claim. It was my understanding. Well, that kind of erodes on your argument. But my understanding, though, was part of the problem was that they could not find some of the key jurors by that point. Okay. Go ahead. I have a question for you about I have concerns about jurisdiction in this case. All right. And that I think the case that you cite deals with abandonment. Here, apparently the client fired the lawyer, but no one filed the paperwork to show that he was pro se. And so I think in your reply brief, you argue that the mailbox rule as codified in FRAP 4C applies to represented and unrepresented prisoners. But in 2014, didn't we reaffirm that the mailbox rule applies only to pro se prisoners in Hernandez v. Spearman? It's a Ninth Circuit case, so how do I get around that? Well, but I am citing I gave two arguments for why there is jurisdiction. And the first one is based on a very clear Ninth Circuit precedent, Vaughn v. Ricketts. And Vaughn v. Ricketts states that what matters is not whether the lawyer was technically still representing the defendant, but whether he was actually assisting. And we now have after the motion to supplement the record, it is now undisputed that I did not actually assist Mr. Mason with the notice of appeal. The facts are, and I apologize, what I didn't do was follow the rule, the local rule, which said that I should get leave of court to withdraw. But it is undisputed that Mr. Mason and I both agreed that I would withdraw and that he handled the- Well, it's sort of ironic that he fired you, and then we have this jurisdictional issue, and now you're back. After he, on his own, obtained a- it was not clear that he would ever obtain a certificate of appealability. But once he did that on his own and the court said they would appoint counsel, he contacted me again and asked if I would please take the appointment for that. Well, he didn't really fire you, did he? Did Mr. Mason fire you? Or did the brother? Who fired you? Oh, no, no. We're talking about years and years after the brother. Oh, later. Years and years after the brother was involved in this. Oh, okay. I guess it is ironic that we have two situations like that. But this was a completely amicable thing between me and Mr. Mason. He wished, when he lost in the district court, he wished to just work on his own to see if he could get a certificate of appealability and get an appeal going. And those are undisputed facts, and they're exactly the facts in Vaughn v. Ricketts. The same thing. The lawyer did not follow a local rule, but he did, in fact, not help the client, and for that reason the mailbox rule applied. Counsel, what do you do with the Washington Supreme Court's finding that counsel was a vigorous advocate and did not advocate his authority to make strategic and tactical decisions? What do we do with that finding? I don't think very much. This isn't a Strickland claim that we're making. But you have to show some effect on the proceedings, don't you? Right. He may have been vigorous while he was in court, but as I said, he didn't do any preparation, and then he withdrew at a critical time. But if he was effective in court despite not doing much preparation, how is there any actual conflict of interest shown, any prejudice, any effect? Well, there was, as I said, there was a negative effect. I'm not sure what they meant by being vigorous. I mean, you can argue all you want in court, but if you're not prepared, your chances of winning are not very good. But don't we have to determine that that finding was unreasonable in order for you to prevail? I don't think that the use of the word vigorous negates the idea that he may have, that his conflict may have had an adverse effect in other ways. You know, maybe he did do a good cross-examination somewhere in the case, but that does not change the fact. I realize I'm almost out of time, and I'm wondering if I could still reserve a bit for rebuttal. All right. You may.  Thank you. May it please the Court, John Sampson, Assistant Attorney General, representing the respondent. As this Court is aware, this case does come before the Court under AEDPA 2254D, and to obtain relief the petitioner must show the state court's decision on this claim was an unreasonable application of U.S. Supreme Court precedent. And the state's position is that the petitioner has failed to satisfy that burden for two reasons. First, this claim is not based on clearly established federal law, because this is not a type of conflict held by the U.S. Supreme Court to violate the Sixth Amendment. And second, even if it was clearly established, the state court's decision was not unreasonable. The petitioner relies on Wood v. Georgia for his Supreme Court case, but Wood v. Georgia was a due process case. It was not a Sixth Amendment case. The case was before the U.S. Supreme Court on an equal protection challenge. That was the claim that the Court granted cert on. But then the U.S. Supreme Court remanded for the state court to determine in the first instance whether there was a due process violation, because the case was on a probation revocation appeal. And the issue then was did that violate a right to counsel under the due process clause? The Wood court did cite to its prior precedent, but that prior precedent was Kyler v. Sullivan and Holloway v. Arkansas, which the Supreme Court in Mickens v. Taylor clearly said only established a conflict of interest where there is multiple representation in the same criminal matter. What's your position? I'm sorry. Go ahead. No, you please go. What's your position on whether Vaughn v. Ricketts allows the petitioner to take advantage of the prison mailbox rule? Your Honor, I agree that Vaughn v. Ricketts says that counsel does not have to withdraw and that if the petitioner actually shows that he was truly proceeding pro se, the fact that counsel did not formally withdraw is not sufficient to defeat application in the mailbox rule. The question then becomes did counsel actually withdraw and did the petitioner truly proceed pro se at that point, not whether counsel formally withdrew but whether he was no longer truly acting as counsel? Here's what Vaughn v. Ricketts says. We find an exception to the 30-day filing requirement for notices of appeal applicable to prisoners who file pro se and deliver their notice of appeal to prison officials within 30 days with instructions to forward it to district court. I'm paraphrasing. That rule could be applied to a prisoner who was represented at trial  You take issue with the last part of that. Well, Your Honor, I think that if he truly was no longer represented, the difficulty is when we filed our opening brief, the only evidence in the record was that he was still represented. Counsel had filed a notice of unavailability saying he would be available again. During the time between the judgment and the date the notice of appeal had to be filed, he was again available. There was no indication that he was actually withdrew. And then we have the unusual circumstance where he is back again as counsel. And so the concern is whether or not he truly ever stopped being counsel or assisting Mr. Mason. And in the Stillman case, which is cited in our brief, Stillman v. Lamarck, this court recognized that even if the petitioner is not formally represented by an attorney, if the attorney is truly assisting him in some manner, then he is not proceeding without the assistance of counsel. But what evidence is there in the record that the attorney was assisting him? Your Honor, the only evidence was when we filed our brief was that he had never withdrawn. He had filed a notice of unavailability. And according to that, he was still then available as the counsel. And now he is back as counsel. So I cannot come in and dispute his declarations filed after our briefs were filed saying that he was fired by Mr. Mason and that he did not assist him. So it's your position if just not filing the paperwork, even though there may be, I don't know, the rule may also require that the, that the, that I guess under a local rule, 83.2, it seems that firing counsel required a stipulation and proposed order of withdrawal that must be signed by all opposing counsel or pro se parties and be signed by the party's new counsel or the party. So you're just saying the fact that that wasn't done, which I guess the defendant could have also, he had to sign something too. You're just saying that, don't worry about that now? No, Your Honor, I'm saying that that was never done. So we filed our briefs brazing this issue. All right, but now are you saying there is jurisdiction? Your Honor, what I'm saying is that we will not strongly contest because we have no ability to contest his subjective statements presented in the post-briefing declarations that he was essentially fired. Well, it's just that jurisdiction is something that, you know, courts take pretty seriously and assuming jurisdiction without, you know, is not, you know, a lot of times we assume things and then go to the second prong of something, but jurisdiction is a little, you know, you can create slippery slopes. I agree, and that's a serious issue because you could have a situation where the petitioner is being actively represented by counsel, which occurred in the district court in this case, being actively represented by counsel on appeal and then is, and I'm not saying it occurred in this case, but could be playing fast and loose with the rules and they realize they blew by their deadline, so they quickly have the petitioner claim that he was actually proceeding pro se. How often does that happen? I'm not saying it happens very often, Your Honor. I'm just saying that is a concern. But when we filed our brief and raised this issue, all the evidence that was in the record showed that he was still represented by counsel. Rule 4, the mailbox rule under this court's Federal Rules of Appellate Procedure, require a certificate by the petitioner that was not filed when he filed his notice of appeal. So even then he, but we further researched the issue and determined he did in fact mail the document within the 30th day. The concern that I wanted to raise before the court when I filed my brief based on the record that actually existed at the time was that this court did not have jurisdiction. Counsel, what do you do with the language in Ricketts that says the mailbox rule applies if, for all practical purposes, the defendant was acting or the petitioner was acting pro se? What do you do with that language? I would think that if that was a situation where counsel had abandoned the petitioner and was no longer truly representing him in any form, no longer... Well, abandonment is different than for all practical purposes. That's a little more lenient, it appears to me. If he's acting pro se for all practical purposes, for instance, if the formality of the paperwork just wasn't signed but nevertheless he was acting pro se, Ricketts appears to say that the mailbox rule applies. Ricketts does say that, Your Honor. But Stillman also says, which was issued after Ricketts, also says that even if counsel was not formally representing him, if counsel was doing something to assist the petitioner, then the petitioner was not proceeding without the assistance of counsel. But we don't have that in this record. That he was doing something. Only that, Your Honor, that he was actively representing him in the district court, that there was a notice of unavailability that said that he was, again, available during the time period where the notice of appeal would be filed, that he is now currently representing him. At that time, there was nothing else. Now there are post-appellate briefing declarations that indicate that he wasn't doing anything. I have nothing at this time to rebut that. That's all I can say. I would say that, and I understand jurisdiction is very important, but there is also the fact that the claim fails on the merits. And if the court wanted to deny or to affirm the judgment on that basis, the state would be agreeable to that because this is not a case where the state court decision was an unreasonable application. They complained that the attorney was not prepared for trial, but actually the attorney did do quite a bit of work. And the main problem was with Mr. Mason's girlfriend, Ms. Coleman, and the fact that she provided inconsistent testimony. But that was based on the fact that her testimony and her statements were inconsistent and she couldn't get her story straight, not based on the ill-preparations of counsel. I see I'm out of time, so unless the court has further questions, I would ask that the court affirm. It appears not. Thank you, counsel. Thank you. Rebuttal. We'll give you two minutes for rebuttal. Thank you, Your Honor. First of all, I think if the court were to actually look at the notice of appeal and the request for certificate of appealability, it's pretty clear that there was no attorney helping with that. You'd be surprised. And I do apologize for not following the local rule, but we have undisputed declarations from three people, including myself, that in fact all parties understood that there would be no help from me, and there was not. Getting back to the other issue of why ultimately the motion, the post-trial motion failed, I do now see that I have it in my brief, that by the time new counsel could be located, specifically Juror Maria Gilkyson, who had indicated earlier that she was willing to be interviewed, could no longer be found. So there was at least some level of some adverse effect at that point. As far as the State's argument that Wood v. Georgia is not the clearly established precedent here, I would simply ask the court to review my reply brief on that issue. I think it's very clear that in Mickens, the U.S. Supreme Court did come right out and say that Wood v. Georgia was simply following the same rule as Kyler v. Sullivan. That didn't help the litigant in Mickens itself, but the Supreme Court did give its approval to Wood as valid precedent. Thank you very much. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. The next case on calendar, United States v. Clyde, has been submitted on the brief.
judges: Hawkins, Rawlinson, Callahan